No. 21,287.

A. J. VOGLER, *Appellee,* v. J. D. BOWERSOCK, doing business as the LAWRENCE PAPER MANUFACTURING COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Validity of Release—Trial by Jury.* Section 5930 of the General Statutes of 1915 (Workmen's Compensation Act, § 36), construed, and *held,* that in actions to enforce compensation where the validity of a release or other discharge of liability is involved, either party may, when the case is called for trial, demand a trial of that issue by a jury.

2. SAME—*Release Set Aside—Sufficiency of Evidence.* Evidence examined, and held sufficient to sustain a judgment setting aside a release executed by the plaintiff purporting to discharge the defendant from liability for compensation.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed February 9, 1918. Affirmed.

*S. D. Bishop,* of Lawrence, and *O. L. Rider,* of St. Louis, Mo., for the appellant.

*John J. Riling,* and *Edward T. Riling,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The defendant appeals from a judgment in plaintiff's favor under the workmen's compensation act.

Mr. Bowersock, the defendant, is the owner of a paper mill in which the plaintiff, while employed at a corrugating machine, was injured, his left hand being drawn into the rollers and crushed, resulting in the loss of the hand, with the exception of the thumb. The accident occurred in May, 1914. The answer pleaded as a defense a settlement and release on the 9th of September, 1914, in consideration of the payment to plaintiff of $500. The instrument of release was acknowledged before a notary public and filed in the office of the clerk of the district court. In his reply the plaintiff alleged that while he was in the defendant's employ an arrangement was entered into by which defendant deducted the sum of five cents for each $5 or major portion thereof earned by plaintiff, which sums, together with the similar deductions from the wages

of all the employees, were paid for the purpose of obtaining workmen's collective insurance; and that the release was obtained by the agent of the insurance company carrying the collective' insurance, who did not disclose to plaintiff the fact that he was acting as the agent of Mr. Bowersock, but claimed to be the representative of the insurance company; and that plaintiff accepted the $500 in settlement of his claim for insurance, and not in payment of compensation from defendant. The reply alleged that the agent of the insurance company falsely and fraudulently represented to the plaintiff that the instrument he was signing was only a receipt for his claim against the collective insurance, and that he signed it relying upon and believing the representations, without knowing that the agent claimed to or did represent the defendant. The plaintiff also alleged that he is a man of little education, and was induced by the statements and representations of the agent of the insurance company to sign the instrument without reading it or having it read to him.

When the case was called for trial, the defendant insisted that the issue of fraud be tried before the court without a jury, and urges error in denying his request. He relies upon provisions in the workmen's compensation act (Gen. Stat. 1915, §§ 5917, 5921-5923, 5930) which authorize settlements by agreement, and which provide for the form of such agreements and their acknowledgment; for filing them for record with the clerk of the district court, and for cancellation of any agreement within one year thereafter by the judge of the district court, upon the application of either party, in cases where the agreement or award has been obtained by fraud or undue influence; and especially upon the provisions of section 5930, which declares that the workman's right to compensation—

"may, in default of agreement or arbitration, be determined and enforced by action in any court of competent jurisdiction. In every such action the right to trial by jury shall be deemed waived and the case tried by the court without a jury, unless either party, with his notice of trial, or when the case is placed upon the calendar—demand a jury trial."

It should be noted in this connection, however, that the same section contains the following provision:

"An action to set aside a release or other discharge of liability on the ground of fraud or mental incompetency may be joined with an action for compensation under this act."

While it is obvious that the compensation act was made up of sections taken from similar acts in other states, and while we have no provision in our practice for having a cause "noticed for trial," we think the provision for waiving a trial by jury should be construed to mean that when the case is called for trial, if neither party demand a jury, the right to a jury trial is deemed waived, and the case is then to be tried by the court.

The record contains no reference to any demand by plaintiff for a jury, but presumably when the case was called for trial the court was engaged in the trial of jury cases. The abstract recites that the case came regularly on for trial before the judge and a jury, and thereupon, before the jury was impaneled, counsel for defendant objected "to a trial . . . at this time for the reason that the pleadings disclose the fact that a contract of settlement has been entered into between the plaintiff and the defendant, and that if this cause is triable at all, it is by the judge." The court then stated its reasons for holding the cause triable by a jury. The plaintiff appeared to be ready for trial and, although he made no demand for a jury, his attitude we must construe as being opposed to that taken by counsel for the defendant. Besides, it would be a useless proceeding to reverse the judgment and send the cause back for another trial, because the plaintiff could make a formal demand for a jury and thus prevent defendant from trying the case before the court.

The main contention is that plaintiff failed to sustain the burden of proof and show that the release was obtained by fraud or misrepresentation. Upon this issue the evidence was in direct conflict, but it was a pure question of fact. Moreover, the trial court heard and saw the witnesses and has approved the verdict; it comes to us sanctioned with that approval, and we are bound by it. The most that can be said is that the evidence was sufficient to sustain a verdict either way on the issue of fraud. There were a number of circumstances which told strongly against the plaintiff's contention that it was obtained by fraud or misrepresentation. He was not laboring under any sickness or mental disability; his injuries were received on the 20th of May, 1914, and the release was not executed until the 9th of September. After receiving the

payment of the $500, he made no further claim against the defendant for compensation, although he had been paid partial wages for a portion of the time prior to the settlement; and he never consulted an attorney about a claim for compensation until the middle of the summer of 1915. This action was not brought until December, 1915, more than a year after he was paid the $500. At the trial it was shown that his contention that he was unable to read was unfounded. He could read and he could write; and this was demonstrated before the jury. He was able to read the release, but claimed not to understand the meaning of the words "original," "compromise," "employer," "disagreement," "settlement" and "sum." Written reports were produced which had been made out by him, showing the character and quantities of work turned out while he was operating the corrugating machine. There was no evidence tending to show that any attempt was made to prevent him from reading the paper before he signed it.

On the other hand, there were circumstances which tended to support his contention that he signed the release without knowing that it was for any claim except collective insurance. The same insurance company which indemnified the defendant for liability under the compensation act, and whose agent procured the release, carried the workmen's collective insurance under a policy issued likewise to Mr. Bowersock, but paid for by deductions from the workmen's wages. The plaintiff had been injured once or twice before, and the same insurance company, through Charlton, the local agent, had settled with him for his insurance. When plaintiff went to the doctor's office to see the agents they offered him $300. His testimony is that he insisted he was entitled to $750, and that he had a paper at home which would show this fact, and he asked the agent what the company did with the sums deducted from the wages of the workmen, since they did not seem willing to pay him what was right. He and Doctor Phillips went to his home and brought back the paper, which contained instructions to employees in regard to their collective insurance and provisions as to the amount to be paid for various injuries. It contains a statement that plaintiff would be entitled to recover $750 for certain injuries, and its introduction in evidence tended in some measure to sustain plaintiff's contention

that he thought he was settling with the agents of the insurance company for his collective insurance.

The instrument does not contain the name of Mr. Bowersock, but refers to him as "employer." It recites that "the said employer, in compromise settlement of all liability on account of said injury, has paid to me the sum of five hundred dollars ($500.00) in full satisfaction of all rights of action and claims of injury on my part by reason of the said injury"; and that plaintiff released his employer "from any and all and every liability, . . . from all claims, legal or equitable, suits, actions, causes of action or proceedings for the recovery of compensation, under statute or otherwise, for damages or compensation for or on account of the said injury above referred to, either to my person or property."

No reference is made to insurance, collective or otherwise; the insurance company is not mentioned, and yet that company, through whose representative the release was procured, still claims, as shown by its correspondence with plaintiff's attorney, that the instrument was intended to and does cover, not only the claim against Mr. Bowersock under the statute, but also plaintiff's claim for collective insurance, and that the $500 paid to the plaintiff satisfied both claims. Usually in cases of this kind the defense is conducted by the surety company in the name of the employer. Whether it did so in this instance does not appear from the record. If the release in question was intended to include the settlement of plaintiff's claim for collective insurance, it should have contained a recital to that effect; and it would seem that by the omission of many legal and technical terms and useless repetitions there would have been room for some reference to collective insurance, without increasing the length of the instrument. The fact that the insurance company, which is an interested party, makes this claim in the face of the omission of any such recitals in the release shows that the instrument does not express all that was intended, and indicates that the subject of collective insurance must have been discussed in the settlement. The verdict of the jury is a finding that the entire sum paid was for insurance, and no part of it for compensation.

The defendant relies upon the case of *Railway Co. v. Coltrane*, 80 Kan. 317, 102 Pac. 835, where it was held that the

plaintiff was bound by a written release which she signed and afterwards claimed was obtained by fraud. The facts and circumstances upholding the validity of the release in that case were much stronger than those in the present case. The plaintiff was an experienced schoolmistress and wrote upon the voucher in her own hand the statement that she had read the contents thereof and fully understood its terms. It was said in the opinion that, "she ought to be bound by its terms, unless some fact is shown or found clearly indicating that her signature to it was obtained by fraud or mistake." (p. 327.) In that case, as in this, it was alleged that the misrepresentations were made with attempt to deceive and defraud, and also that plaintiff executed the release without knowing its contents. We think the court committed no error in the oral instructions given to the jury, in which they were told they might find for the plaintiff without finding that the agent of the insurance company, at the time he made the representations, intended to practice fraud upon the plaintiff.

The judgment is affirmed.